```
             UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT
```

LEO PERRY,                           :
                                     :
    Plaintiff,                       :
                                     :
V.                                   :   Case No.  3:09-CV-223(RNC)
                                     :
DEPARTMENT OF CORRECTION,            :
                                     :
    Defendant.                       :

## RULING AND ORDER

Plaintiff brings this action under Section 504 of the Rehabilitation Act of 1973 against his former employer, the Connecticut Department of Correction ("DOC"), claiming that his employment as a correction officer was terminated on the basis of his disability: a venous angioma associated with seizures and loss of consciousness.  Defendant has moved for summary judgment arguing that plaintiff cannot make out a prima facie case under the Act.  I agree and therefore grant the motion.

I.   Facts

The following relevant facts are undisputed or, where disputed, taken in the light most favorable to the plaintiff. Plaintiff was hired by the DOC as a correction officer trainee in 1994.  On July 11, 1995, before his working test period was complete, he was terminated for being inattentive on post.  He was rehired in 2001.

Plaintiff was suspended for 25 days as a result of three incidents that occurred in 2006.  In one incident, a superior claimed to have seen plaintiff asleep in an office while on duty.

The windows of the office were covered with paper.[1]  An arbiter upheld plaintiff's 25-day suspension, noting that the Table of Standard Penalties indicates that dismissal is the penalty for sleeping on duty.  Plaintiff was warned that future violations would result in dismissal, and he was advised to seek guidance from the DOC's Employment Assistance Program if he was having personal difficulties.

On July 16, 2007, at 11:54 p.m., Lt. Charles Fritz found plaintiff sleeping in an office while on duty.  Plaintiff was reclined in a chair with the lights off.  His feet were propped on a desk, his arms were folded, and he was snoring.  Fritz videotaped plaintiff in this position for about ten minutes.

Some time after waking, plaintiff told Fritz he was having a medical incident and needed medical attention.  Plaintiff had dizziness and chest pains as well as numbness in his legs.  He was taken to the hospital and kept overnight for monitoring as a precautionary measure against a possible heart attack.  Upon release, he was diagnosed with a syncopal episode, or temporary loss of consciousness.

The next day, plaintiff was placed on administrative leave while his conduct was investigated.  The investigation found a

---

[1] In his deposition, plaintiff denied that he was asleep during this incident.  He acknowledged that the windows of the office were covered but claimed he did not cover them.  He said that his supervisor lied about the incident because she did not like him.

number of violations, including inattentiveness.  In light of the July 16 incident and plaintiff's prior disciplinary record, the DOC notified him on October 26, 2007, that he was terminated effective November 9, 2007.

That November, plaintiff was diagnosed with a venous angioma, a prominent vein in a deep brain structure, which can be associated with seizures and loss of consciousness.  He determined that he had been having three or four small seizures per day since approximately 1994, although he was not aware of them, and he had not lost consciousness at work prior to the July 2007 incident.  The seizures could cause him to lose consciousness for up to 15 to 30 minutes.  Plaintiff's doctor restricted plaintiff's driving for six or seven months, citing public safety concerns.  He began to treat the plaintiff, trying several drugs unsuccessfully before starting him on Topamax.  With the Topamax, plaintiff's condition improved.  As of the time of his deposition in November 2009, plaintiff was having seizures no more than once every one to two months.  He still suffered from migraine headaches.

At the time of the incident on July 16, 2007, plaintiff was not aware he had a medical condition that caused seizures or loss of consciousness, nor had he received treatment for any such condition.  He was not diagnosed until November 2007, after the decision to terminate his employment had been made.  Plaintiff

testified that after the incident of July 16, 2007, he asked for an accommodation from someone at the DOC, but he did not specify what accommodation he requested or from whom he requested it.

## II. Discussion

A court will grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence must be viewed in a light most favorable to the party opposing summary judgment. Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted). In this case, the record does not permit a finding that defendant is liable under the Rehabilitation Act.

Claims under the Rehabilitation Act are analyzed using the same burden shifting analysis applicable to Title VII employment discrimination claims. Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002). The plaintiff must first establish a prima facie case. Id. at 49. To establish a prima facie case of discriminatory termination, plaintiff must show that (1) he is an individual with a disability within the meaning of the Act, (2) he was otherwise

qualified to perform the job, (3) he was discharged solely on the basis of his disability, and (4) the employer received federal funds.  Kinsella v. Rumsfeld, 320 F.3d 309, 314 (2d Cir. 2003); Borkowski v. Valley Centr. Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995).  Plaintiff has not made this showing.

"Individual with a Disability"

A disabled individual under the Act is one who (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment.  29 U.S.C. § 705(20)(B) (1998), amended by 122 Stat. 3558 (2008); 42 U.S.C. § 12102(1) (1990), amended by 122 Stat. 3553 (2008); Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 147 (2d Cir. 2002). Plaintiff does not argue that he had a record of an impairment or was regarded as having an impairment.  Instead, he argues that his impairment substantially limited a major life activity.  More specifically, he argues that his disorder impaired his ability to remain conscious and thereby substantially limited his ability to work.  Working is a major life activity.  See Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 642 (2d Cir. 1998).

Viewing the record in a manner most favorable to the plaintiff, I agree that his alleged disability substantially limited his ability to work as a correction officer.  Plaintiff's disorder caused him to commit a serious violation at work -

inattentiveness.  Crediting his testimony, and giving him the benefit of all reasonable inferences, his disorder resulted in several seizures a day for over a decade, and made it likely he would commit another violation.  Therefore, for purposes of the present motion, I conclude that plaintiff's impairment substantially limited his ability to perform his job as a correction officer.

However, the pertinent inquiry is not whether the plaintiff was unable to perform his specific job.  "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."  Sutton v. Unitred Air Lines, Inc., 527 U.S. 471, 491 (1999).  Plaintiff has not presented evidence that he could not work in other jobs for which he was qualified by his education, experience and training.  In the absence of such evidence, I conclude that a reasonable jury could not find that his disorder prevented him from working in a broad class of jobs.

"Otherwise Qualified"

The Act requires a disabled plaintiff to establish that he was otherwise qualified for the position.  See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).  An individual is not otherwise qualified for a job if he is unable to perform an essential function of the job, either with or without a

6

reasonable accommodation.  Shannon, 323 F.3d at 99-100; Borkowski, 63 F.3d at 135.  To determine if a function is essential, the court must examine (1) whether the employer actually required employees in the position to perform the function and (2) whether removing the function would fundamentally alter the position.  Shannon, 332 F.3d at 101.  Courts give considerable deference to employers' views of required qualifications.  Id. at 100.[2]

Defendant has presented ample evidence that it required correction officers to be attentive at all times while on duty.  DOC regulations explicitly require attentiveness, and plaintiff was disciplined for inattentiveness.  Permitting correction officers to be inattentive would fundamentally alter the position.  Therefore, without an accommodation, plaintiff was not otherwise qualified for the position of correction officer.

Plaintiff argues that with a reasonable accommodation, he could have sought treatment and returned fully qualified to work.  In his brief, plaintiff asserts that he asked to use his

---

[2] Defendant argues that plaintiff was not qualified, analogizing this case to others involving plaintiffs who were unqualified because they required frequent and often unpredictable absences from work.  See, e.g., Carr v. Reno, 23 F.3d 525, 531 (D.C. Cir. 1994); Howard v. N. Miss. Med. Ctr., 939 F. Supp. 505, 509 (N.D. Miss. 1996).  I do not think these cases are on point.  Plaintiff's disorder results in occasional inattentiveness, not repeated and unpredictable absences.  Even so, plaintiff's inattentiveness was sufficient to render him unqualified, as discussed infra.

7

accumulated sick leave to obtain treatment. But he did not say that at his deposition. Viewing the record most favorably to the plaintiff, a reasonable jury could not find that he asked to use his sick leave for diagnostic treatment.

Further, the record does not support a finding that plaintiff's 50 days of sick time – even added to his administrative leave – would have allowed him to return to the DOC able to work. Two months after plaintiff's termination, his doctor had just started him on Topamax. In November 2009, plaintiff stated that in the past year or so, his seizures had been much less frequent, indicating that in January 2008, he was still having seizures.

"Terminated Solely on the Basis of Disability"

To sustain his claim under the Rehabilitation Act, the plaintiff must have been discriminated against solely because of his disability. <u>Reg'l Econ. Cmty. Action Program</u>, 294 F.3d at 49. Defendant argues that even if plaintiff's impairment constituted a disability, it could not have fired him on the basis of his disability, as it was not even aware of the impairment at the time. I agree. Plaintiff was notified of his impending termination in October 2007; however, he was not diagnosed with a venous angioma until November 2007. Therefore, defendant could not have known of plaintiff's impairment when it decided to terminate his employment.

8

Plaintiff submits that he has a valid claim because he was fired based on a symptom of his disability – losing consciousness while at work. He argues that if an employer fires a plaintiff for conduct causally related to a disability, it can be liable under the Rehabilitation Act. See Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 515 (2d Cir. 1991).

I disagree with plaintiff's reading of Teahan. In that case, the plaintiff told his employer about his disabling substance abuse problems before he missed several days of work. The employer pursued termination – even after Teahan went to rehabilitation and did not miss a day of work from the end of January through April – and fired him in April. The court said that if Teahan's absenteeism was caused by his substance abuse problems, then terminating him based on his absenteeism was equivalent to terminating him based on his handicap. If an employee had a limp, the court noted, it would be similarly violative for the employer to terminate him based on a loud "thumping" when the employee walked down the hall, as the thumping would be caused by the employee's disability. It would be a mistake to "allow an employer to 'rely' on any conduct or circumstance that is a manifestation or symptomatic of a handicap, and, in so doing, avoid the burden of proving that the handicap is relevant to the job qualifications." Teahan, 951 F.2d at 517.

The employer in Teahan knew of the plaintiff's substance abuse problems.  That knowledge exposed Teahan to potential stereotyping, and one of the key goals of the Rehabilitation Act is "to ensure that handicapped persons are not victimized in the employment context by archaic or stereotypical assumptions concerning their handicap."  Id. at 518.  Under the Act, then, an employer may need to allow for minor or temporary performance difficulties to avoid stereotyping.  However, an employer cannot be expected to inquire into possible disabilities every time an employee exhibits poor performance.  Circuit courts have agreed that if an employee exhibits poor performance not obviously related to a disability, the employer may take adverse action against the employee without incurring liability. See Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928 (7th Cir. 1995) (employer not liable under the ADA for firing plaintiff for tardiness and laziness when it did not know of plaintiff's amyloidosis); Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178 (6th Cir. 1993) (hospital not liable under the Rehabilitation Act for firing a doctor caught stealing when it did not know of his bipolar disorder); see also Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 724-25 (2d Cir. 1994) (termination on the basis of asthma not violative because asthma is not a disability under the Act, and employer cannot be held liable on the basis of new evidence that plaintiff was actually suffering from a more

10

serious sinus condition, when neither the plaintiff nor her employer were aware of the serious condition at the time of termination).[3]

Here, plaintiff's impairment was not diagnosed until after the decision was made to terminate his employment. Temporary unconsciousness – especially when it so closely resembles sleeping – is not clearly a symptom of a disability. Plaintiff's hospital visit following the incident of July 16, 2007, and the medical records provided to the DOC, were not sufficient to put his employer on notice of his impairment. The medical records prior to the date defendant decided to terminate plaintiff's employment do not include a venous angioma diagnosis, nor do they indicate that plaintiff had a recurring problem with loss of consciousness. See Ragin v. E. Ramapo Cent. Sch. Dist., No. 05 Civ. 6496(PGG), 2010 WL 1326779, at *20 n.14 (S.D.N.Y. Mar. 31, 2010); Watson v. Arts & Entm't Television Network, No. 04

---

[3] See also Matya v. Dexter Corp., No. 97-CV-763C, 2006 WL 931870, at *8 (W.D.N.Y. Apr. 11, 2006), aff'd 250 Fed. Appx. 408 (2d Cir. 2007) ("The employer cannot be expected to infer a disability for purposes of the NYSHRL or the ADA on the basis of plaintiff's personal problems and performance deficits."); Kolivas v. Credit Agricole, No. 95 Civ. 5662 (DLC), 1996 WL 684167 (S.D.N.Y. Nov. 26, 1996), aff'd 125 F.3d 844 (2d Cir. 1997) (analyzing a claim under the ADA; finding defendant not liable when supervisor had begun termination process before learning of employee's depression).

Civ.1932(HBP), 2008 WL 793596, at *10 (S.D.N.Y. Mar. 26, 2008).[4]

III. Conclusion

Accordingly, defendant's motion for summary judgment (doc. 42) is hereby granted.  The Clerk will enter judgment for the defendant and close the case.

So ordered this 31st day of March 2012.

/s/ RNC<br>
Robert N. Chatigny<br>
United States District Judge

---

[4] The conclusion that plaintiff was not fired on the basis of a disability is consistent with a neutral arbiter's decision finding that he was fired for just cause.  The arbiter found that plaintiff did not faint on July 16, 2007, but instead was inattentive to duty, as evidenced by the video showing him snoring with his feet on the desk.  The decision of the neutral arbitrator bolsters my conclusion that plaintiff cannot prove he was fired in violation of the Act.  See Collins v. New York Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002).